942 A.2d 121 (2008)
398 N.J. Super. 464
In the Matter of the ESTATE OF Mary Margaret VNENCAK, Deceased.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 2007.
Decided February 29, 2008.
*122 Trautmann and Associates, L.L.C., Rockaway, attorneys for appellant/cross-respondent the Estate of Mary Margaret Vnencak, and Daniel Vnencak, Administrator (Gregg D. Trautmann, on the brief).
Cohn Lifland Pearlman Herrmann & Knopf, L.L.P., Cherry Hill, attorneys for respondent/cross-appellant Andrew Vnencak (Charles R. Cohen, on the brief).
Before Judges PARRILLO and GRAVES.
PER CURIAM.
Daniel Vnencak (Daniel), Administrator C.T.A. of the Estate of Mary Margaret Vnencak (Estate) appeals from an order dated February 14, 2007, which enforced a Settlement Agreement and Mutual General Release (Settlement Agreement) and required the Estate to pay counsel fees and costs to Daniel's brother, Andrew Vnencak (Andrew), in the amount of $20,000. In his cross-appeal, Andrew contends the court "misused its discretion" when it awarded him counsel fees and costs in the amount of $20,000, instead of "the full $24,336.34 to which he is entitled." After considering these contentions in light of the record and the applicable law, we affirm.
For the sake of clarity some background information is in order. We begin by recounting the relationship of the members of the family whose affairs are involved in this appeal. Mary Margaret Vnencak (Mary), now deceased, was the mother of Thomas Vnencak (Thomas). Thomas has two sons, Daniel and Andrew, both adults. Joseph Runyans (Runyans), also an adult, is the grandson of Mary, nephew of Thomas, and cousin of Daniel and Andrew. Finally, Daniel Vnencak has a son, Jonathan Vnencak (Jonathan), who is a minor and beneficiary under Mary's will of half the cash assets of her Estate.[1]
Prior to her death, Mary's son Thomas was her power of attorney, and in that capacity, Thomas initiated prosecution of a claim on Mary's behalf against her grandson, Runyans, for the theft of approximately $400,000, which Mary had held in certificates of deposit. Mary died on March 11, 2000, and pursuant to her Last Will and Testament, dated November 6, 1998, Andrew was appointed Executor of *123 her Estate. As Executor, Andrew, through attorneys H. Neil Broder (Broder) and Gary N. Marks, continued to pursue the Estate's claims against Joseph Runyans. On November 28, 2000, Andrew and Runyans entered into a settlement agreement (Runyans Settlement) whereby Runyans received $200,000 and the Estate received $190,000, with any remaining balance left in the certificates of deposit being "divided equally between Runyans and the Estate."
On March 15, 2001, Broder issued two checks, each for $97,132.06, from his attorney trust account, to Thomas and Andrew, representing the funds recovered from the Runyans Settlement. Following the advice of Broder, neither Andrew nor Thomas turned these funds over to the Estate. Instead, they kept the money for personal use.[2] On October 1, 2001, Daniel commenced an action on behalf of his son Jonathan, against Andrew, alleging the funds Andrew received from the Runyans Settlement were cash assets of the Estate.
While Daniel's lawsuit against Andrew was pending, Broder filed a lawsuit against the Estate and Andrew for attorney's fees in the amount of approximately $5,000 (Broder Fee Suit). On June 4, 2004, Andrew and the Estate, represented by Charles R. Cohen (Cohen), answered Broder's complaint and counterclaimed for negligence and breach of contract in relation to the Runyans Settlement. Also, on June 11, 2004, Andrew, individually and as Executor of the Estate, commenced an action against his father, Thomas (Thomas Vnencak Suit), to recover the $97,132.06 Thomas received from the Runyans Settlement.
On June 14, 2004, Andrew resolved the lawsuit Daniel had filed against him by entering into the Settlement Agreement that is the subject of this appeal. Pursuant to paragraph four of the Settlement Agreement, Andrew resigned as Executor of the Estate and agreed, subject to approval by the court, that Daniel would serve as Administrator C.T.A. of the Estate. In addition, the Settlement Agreement provided that Andrew was to pay to the Estate the total sum of $260,000, allocated as follows:
[1]A. $97,132.06 representing the return of funds distributed to Thomas Vnencak by H. Neil Broder, Esq. from the [Runyans Settlement] . . . ;
[1]B. $97,132.06 representing the return of funds distributed to [Andrew] by H. Neil Broder, Esq. from the settlement of the Runyans Suit; and
[1]C. $65,735.88 representing fees and costs incurred by [Daniel in pursuing the Estate's claim against Andrew].

[(Emphasis added).]
In paragraph five of the Settlement Agreement, Daniel, "as anticipated Administrator C.T.A. of the Estate of Mary Margaret Vnencak" agreed:
[5]B. To use his best efforts to diligently pursue and collect on all claims of the Estate (i) against H. Neil Broder, Esq., set forth in the Broder Fee Suit, (ii) against Thomas J. Vnencak as set forth in the Thomas Vnencak Suit and (iii) against Gary Marks, Esq.;
[5]C. To promptly indemnify [Andrew] for that portion of his payment as set forth in Paragraphs 1A and 1C above, on a dollar-for-dollar basis, as is attributable to the *124 funds recovered by the Estate in the action prosecuted in the name of the Estate against Thomas Vnencak in the Thomas Vnencak Suit; and
[5]D. To promptly indemnify [Andrew] for that portion of his payment as set forth in Paragraphs 1C above, on a dollar-for-dollar basis, as is attributable to the funds recovered by the Estate in the action(s) prosecuted in the name of the Estate against H. Neil Broder, Esq., . . . [and] against Gary Marks, Esq.

[(Emphasis added).]
Furthermore, paragraph twenty of the Settlement Agreement required the parties to "fully cooperate with each other in any manner with regard to the further administration of the Estate, the further prosecution of the . . . Broder Fee Suit, Thomas Vnencak Suit, [and] any action against Gary Marks."
In accordance with paragraph ten of the Settlement Agreement, the parties were to "pay their own attorney's fees and costs related to the prosecution and defense of this matter." But paragraph fifteen provided as follows:

LEGAL FEES ON DEFAULT: Should any Party default on any obligation he may have agreed to hereunder necessitating the non-defaulting Party's seeking judicial intervention to enforce his rights under this Agreement, and the action seeking, judicial intervention is found to be meritorious by a court of competent jurisdiction, then and in that event, the defaulting Party agrees to pay the reasonable attorney's fees and costs associated with such action 20 days after the end of time to file an appeal from such finding.
On June 21, 2004, Judge Cramp signed a consent order, which dismissed all claims against Andrew, individually and as personal representative of the Estate, and implemented the provisions of the Settlement Agreement. On June 23, 2004, Greg D. Trautmann (Trautmann), Daniel's attorney, was substituted for Cohen as counsel for the Estate in the Broder Fee Suit.
On July 14 and December 22, 2004, the Estate, now represented by Daniel and Trautmann, amended the counterclaim against Broder, which was originally filed by Andrew and Cohen. The amended counterclaim alleged Broder negligently represented the Estate during its dispute with Runyans and, as a result of Broder's negligence, the Estate "received only approximately $197,000.00 from Joseph Runyans and was thus deprived of approximately $200,000.00 more." In addition, the amended counterclaim sought reimbursement for approximately $100,000 in legal fees. During oral argument on October 13, 2006, Trautmann explained the malpractice claims against Broder as follows:
[T]he agreement was that my client would pursue malpractice claims against Mr. Broder in an effort to get the $200,000 on the negligence settlement. That's the other $200,000. Mr. Andrew Vnencak was to pay back the first $200,000, which he did . . . several months after the settlement. We filed an amended malpractice complaint against Mr. Broder seeking, among other things, the 200,000-dollar negligence settlement with Mr. [Runyans]. . . . Ultimately we settled that case. But we didn't settle it for the sum of $300,000 that my client initially felt he . . . was owed if all things went perfectly for him in the malpractice case. He would have got[ten] the 200 on the negligence settlement from [Runyans], he would have got[ten] the approximate $100,000 in legal fees that had to be expended in the *125 estate action, and then on top of that in actuality he would have gotten attorney's fees under the malpractice case.
. . . .
THE COURT: Because as I understand it, what you're explaining, you thought it was going to be a $300,000 litigation?
MR. TRAUTMANN: That's right.
THE COURT: Plus fees?
MR. TRAUTMANN: That's right.
Trautmann kept Andrew apprised of all progress and developments in the Broder Fee Suit through Cohen. This changed dramatically in May 2006, however, when Trautmann ceased contacting. Cohen and refused to respond to Cohen's numerous attempts to reach him via telephone, facsimile, and e-mail. Finally, on September 22, 2006, Cohen called the office of Theodore H. Hilke, attorney for Broder, at which time he was informed that the Broder Fee Suit had settled and "a Stipulation of Settlement had been filed with the court approximately ten days prior." Cohen immediately mailed and faxed Trautmann a letter stating, in part:
Based upon Mr. Hilke's statement to me, it appears that you and your client may have intentionally withheld the fact that there was a negotiated settlement of the Broder action, and that the money due to Andrew Vnencak [was] . . . concealed and not turned over to him, in violation of his legal rights under the 6/14/04 Settlement Agreement. If true, this conduct could give rise to a civil lawsuit for damages (at the very least).
. . . .
. . . If the settlement funds are within your control and/or that of Daniel Vnencak, you are hereby requested to maintain the status quo and ensure that these funds are kept intact and are not dissipated in any manner.
In an e-mail response, on September 23, 2006, Trautmann replied: "The Vnencak estate case did settle recently. The total settlement was $85,000. They agreed to compensate the estate for the negligent settlement [of the Estate's claims against Runyans]. Sorry I've been unable to get back to you until now."
On September 27, 2006, Andrew filed a notice of motion in the Morris County Superior Court, Chancery Division, seeking to enforce his rights pursuant to the Settlement Agreement, and he sought to compel Daniel to turn over all documents relating to the settlement of the Broder Fee Suit; to pay Andrew $65,735.88 from the $85,000 settlement amount pursuant to paragraph 5(C) of the Settlement Agreement; and to relinquish the remaining funds from settlement of the Broder Fee Suit ($19,264.12) to the clerk of the court to be held pending an adjudication of attorney's fees and costs in accordance with paragraph fifteen of the Settlement Agreement. In a letter brief opposing Andrew's motion, Daniel, on behalf of the Estate, argued:
[T]he underlying lawsuit against Andrew Vnencak was resolved via settlement wherein he voluntarily resigned as Executor and consented to the appointment of Daniel Vnencak to the position of Administrator C.T.A. [who] subsequently litigated and settled the Estate's malpractice claims against Mr. Broder . . ., thus there is no case in which Mr. Cohen can now seek to file a motion before the Court.
Additionally, Daniel alleged Andrew was "no longer a party to the lawsuit in which he now seeks to file a motion" and as a result "has no standing to assert the claims he now attempts to make." Finally, and most importantly for purposes of this appeal, Daniel asserted that Andrew was only entitled to reimbursement of the legal fees he paid under paragraph 1(C) of the Settle Agreement "if [Daniel] was thereafter able to obtain a judgment against Mr. *126 Broder in an amount which would have first made the [E]state whole with regards to the malpractice claims against Broder as well as receiving reimbursement on the claims for attorney's fees against Broder." Since the Estate alleged $300,000 in malpractice damages against Broder but only recovered $85,000 in the settlement, Daniel claimed Andrew was owed nothing.
On October 13, 2006, Andrew's motion was heard by Judge Catherine M. Langlois. Daniel argued, through counsel, that when drafting paragraph 5(D) of the Settlement Agreement the parties understood Andrew would only be reimbursed the $65,735.88 he paid in attorney's fees under paragraph 1(C) of the Settlement Agreement if the Estate recovered from Broder "above and beyond" the malpractice damages allegedly caused by Broder. Ultimately, adjudication of the motion was continued because Daniel's attorney wanted to obtain "documentary evidence" to support his contentions regarding the parties' intent when they entered into the Settlement Agreement.
The parties appeared before Judge Langlois again on December 15, 2006, and Daniel continued to argue that under paragraph 5(D) of the Settlement Agreement, Andrew would only be reimbursed if the Estate recovered monies in excess of $200,000 from Broder. On the other hand, Andrew interpreted paragraph 5(D) of the Settlement Agreement to require "that the first distribution of funds [was] to be received [by] Andrew Vnencak for the 65 thousand . . . and that the balance of all the other claims [would] accrue[] to Daniel Vnencak for the benefit of the beneficiaries [of the Estate]." Andrew asserted the attorney's fees he paid under paragraph 1(C) of the Settlement Agreement was to "buy peace" so the parties could go "forward in all the claims against Mr. Broder," but that "at the end of the day, after all of those claims [against Broder] were pursued, we would be recognized for our good faith in ponying up that first 65 thousand by getting it back off the top, not off the bottom."
In a written decision dated January 25, 2007, Judge Langlois granted Andrew's motion. The court's decision included the following: "the provision of repayment to Andrew on a dollar-for-dollar basis did not prioritize payment depending on one count over another count of the Broder [F]ee [S]uit. `Funds' were recovered. It, is a simple, clear contract reading. Andrew shall be paid $65,735.88." We are in substantial agreement with the trial court's rational. "Generally, the terms of an agreement are to be given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dept. of Transp., 171 N.J. 378, 396, 794 A.2d 141 (2002). Here, the plain and ordinary meaning of the Settlement Agreement entitled Andrew to indemnification in the amount of $65,735.88 in the event the Estate recovered funds from the Broder Fee Suit. We therefore affirm substantially for the reasons stated by Judge Langlois in her written decision on January 25, 2007.
The court's decision was memorialized in an order dated February 14, 2007, and, after receiving submissions from Cohen regarding his attorney's fees and costs, the court ordered the Estate to pay Andrew $20,000 in attorney's fees "[p]ursuant to the terms of the 6/14/04 Settlement Agreement." The fee award was "based on [a] reasonable hourly rate of $325," but did not include 5.7 hours of work prior to the preparation of Andrew's notice of motion to enforce the Settlement Agreement, which was filed in September 2006 or "services rendered in the counsel fee application and/or reply to opposition papers." Otherwise, the court found the time Cohen spent on the case was reasonable.
We review a trial court's decision to award counsel fees under an abuse of *127 discretion standard. Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995) ("[F]ee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion."). "That deferential standard of review guides our analysis." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001).
In the present matter, the Estate contends the affidavit of services submitted by Andrew Vnencak's attorney was "grossly inflated," and the fees sought ($24,336.34) were "absurd in the extreme." On the other hand, in his cross-appeal, Andrew insists that the award of counsel fees (in the amount of $20,000) was inadequate. Our review of the record confirms that the matter was carefully considered by the trial court, and we find no abuse of discretion or reason to interfere with the trial court's determination.
Affirmed on appeal and cross-appeal.
NOTES
[1] According to Daniel's attorney, Mary's will "provided that the cash assets of the estate would go to two great grandchildren, one of them being [Jonathan]." The record does not reflect the name of the other great grandchild who was to inherit half of the cash assets from the state.
[2] Present counsel for Andrew suggests that, prior to her death, Mary expressed her desire that Andrew and Thomas should split the proceeds of any recovery from Runyans.